UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| THUBA T. NGUYEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. CV 07-05496 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff filed this action seeking reversal of the decision by defendant, the Commissioner of the Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case.  [See JS 2]. Plaintiff filed her most recent application for SSI benefits on May 13, 1998, alleging disability since March 1, 1990 due to eye pain, depression, left ear problems, neck pain, low back pain, foot pain, and deafness.[1]  An Administrative Law

---

[1]    Plaintiff filed prior SSI benefits applications, the latest of which was finally denied on July 26, 1997.  The ALJ declined to reopen plaintiff's prior applications and applied res judicata to bar reconsideration of the issue of plaintiff's disability through the date of that decision. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (holding that res judicata barred

1  Judge ("ALJ") denied benefits in a  March 2001 hearing decision, which was later vacated and remanded

2  by the Appeals Council. After a second hearing in December 2004, a different ALJ denied benefits in a

3  written hearing decision dated March 8, 2005. [Administrative Record ("AR") 18-35, 556-596].  In that

4  decision, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a range

5  of medium work, and that her RFC did not preclude her from performing a significant number of jobs that

6  exist in the local and national economy.  [AR 35, JS 2].  The Appeals Council denied  plaintiff's request for

7  review of that decision.[JS 2].

8                                              **Background**

9        Plaintiff was born in Vietnam on October 10, 1961.  [AR 397].  Plaintiff arrived in the United States

10  sometime "around the beginning of 1980." [AR 504]. She is married and has six children.  [AR 504].

11        During the administrative hearing, plaintiff testified with the assistance of a Vietnamese language

12  interpreter.  Plaintiff's hearing attorney, John Huer, advised the ALJ that he did not wish to call his client

13  as a witness because he did not "think she's capable of really testifying." [AR 561]. When the ALJ reminded

14  counsel that the tape of plaintiff's prior hearing testimony had been lost, he replied, "We can try, Your

15  Honor, but I don't think you're going to get much from her."  [AR 561]. The ALJ proceeded to examine

16  plaintiff, whose testimony frequently was non-responsive, disjointed, and difficult to understand. [AR 561-

17  578].

18        At the beginning of the hearing, plaintiff cried when the ALJ asked where she lived.  [AR 561].

19  Plaintiff testified that her body is "unstable." [AR 562].  She testified that she eats whatever her husband

20  gives her.  [AR 568].  She said that she is able to get dressed by herself every day. [AR 568]. Plaintiff did

21  not recall how long she had been married.  When asked whether she is taller or shorter than her husband,

22  she said that she did not know because she "does not measure."  [AR 568].   Plaintiff had difficulty

23  responding to a question asking how many legs a dog normally has, answering three before saying four.

24  [AR 566]. Plaintiff also testified that when she is inside a car, she does not know if the car is moving on the

25  _____

26  reconsideration of claim for period with respect to which a final determination had already been

27  made). Plaintiff does not challenge the application of res judicata, and therefore the issue is
    whether the ALJ permissibly found plaintiff not disabled during or after May 1998.

28

2

1    left or right side of the street.  [AR 570].

2          Plaintiff testified that when she first arrived in the United States, she worked for two or three months,

3    but that she has not worked since. [AR 571].  When asked what sickness prevents her from working,

4    plaintiff answered that her "head is pretty severe" and she has high blood pressure.  When the ALJ asked

5    her what high blood pressure was, and how that contributed to her sickness, she responded, "The doctor said

6    pretty high. It go up in my head, and it causes problems."  [AR 573]. When the ALJ inquired whether

7    plaintiff did any housework such as dusting, cooking, laundry or shopping, plaintiff said that she does not

8    do anything. [AR 574]. Plaintiff testified that her medicine is given to her by her husband because she is

9    afraid to take it alone. [AR 574].  Plaintiff said that she had trouble sleeping and takes multiple sleeping

10   pills, which reduce her appetite. [AR 574].  Plaintiff said that she had considered committing suicide,

11   explaining, "I wanted to, I wanted to, especially now. I don't want to live." [AR 575].  She said that she did

12   not leave home by herself "[b]ecause I'm nervous.  Because I'm sick and I stay in my room.  I lay down in

13   my room.  I feel upset. . . . I don't go outside."  [AR 575].  Plaintiff testified that she was involved in an

14   altercation with her children and husband and threatened them with a knife, leading her family to call the

15   police.  A Vietnamese police officer was sent to her house. She told the officer she was "sick, and . . . they

16   didn't take me.  They said one more time they would take me." [AR 575-576]. Plaintiff also testified that

17   her children "told me that I open my mouth they'll call the, the police to take me." [AR 578].  When plaintiff

18   was asked what she would do if her kids were trapped in a building fire, she responded by saying, "Maybe

19   I would die.  I, I don't want to live." [AR 571].  Queried whether she meant that she "would leave your

20   children to burn in the fire," plaintiff answered, "They'd run, they would run.  They don't need me."  [AR

21   571].

22          Dr. Maxwell, an internist who testified as a medical expert during the hearing, opined that plaintiff

23   has an impairment or a combination of physical impairments that more than minimally interferes with her

24   ability to engage in basic work activity. [AR 149].  These impairments include hearing loss, hypertension,

25   chronic headaches, complaints of chest pain with a diagnosis of costochondritis, and osteoarthritis of the

26   right shoulder with acromioclavicular fusion.  [AR 579].  Dr. Maxwell opined that plaintiff's impairment

27   or combination of impairments do not meet or equal a listed impairment. [AR 580].  Dr. Maxwell deferred

28

1    an opinion regarding plaintiff's mental state to a clinical psychologist who also testified during the hearing,

2    Dr. Betty Borden.  [AR 584].

3          Dr. Borden testified that because of inconsistencies of the record, she could not establish a diagnosis

4    with any reasonable degree of medical probability.  [AR 587].  However, Dr. Borden said that if she credited

5    the records and reports of Dr. Reznick, a psychologist who examined plaintiff at the Commissioner's request

6    in February 2000, or Dr. Ritvo, a psychiatrist who examined plaintiff at the Commissioner's request in July

7    2000,[2] plaintiff would meet section 12.04 of the Listing of Impairments (the "listing") for affective

8    disorders.  [AR 587-588].  Moreover, Dr. Borden testified that if she credited the report of Dr. Hochberg,

9    a board-certified treating psychiatrist who diagnosed plaintiff with paranoid schizophrenia, plaintiff would

10   not meet section 12.04 but would still meet the listing.  [AR 587-588].  Dr. Borden also opined that if

11   plaintiff's own testimony were credited, she would be categorized as "gravely disabled" and "unable to care

12   for herself."  [AR 588-589].  Dr. Borden said that although she could not say for sure that plaintiff was

13   "gravely disabled" as of 1998, Dr. Hochberg's reports show a significant impairment dating back to 1998.

14   [AR 595].

15         A vocational expert also testified that the record lacked any indication that plaintiff had engaged in

16   substantial gainful activity within the past 15 years.  [AR 589-590].  The vocational expert responded to

17   hypothetical questions posed by the ALJ and plaintiff's counsel.  Among other things, the vocational expert

18   testified that if the reports of Dr. Hochberg, Dr. Ritvo, or Dr. Reznick were credited, plaintiff would be

19   unable to work. [AR 593-594].

20                                        **Standard of Review**

21         The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

22   evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

23   2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

24   a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

25   2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

26   _____

27         [2]   The names of these doctors were transcribed incorrectly in the hearing transcript.  The
     correct spellings are used here.

28
                                              4

1    Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

2    required to review the record as a whole and to consider evidence detracting from the decision as well as

3    evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

4    Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

5    one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

6    Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

7                              **Statement of Disputed Issues**

8         Plaintiff does not dispute the physical RFC attributed to her by the ALJ, but she contends that the

9    ALJ erred in assessing her mental RFC.  [JS 4].  Specifically, plaintiff contends the ALJ improperly

10   disregarded opinions of her treating physician and examining physicians.  [JS 6]

11                                    **Discussion**

12   **Treating psychiatrist's opinion**

13        Plaintiff alleges that the ALJ erred in disregarding the opinion of plaintiff's treating psychiatrist, Dr.

14   Hochberg.

15        A treating physician's opinion is not binding on the Commissioner with respect to the existence of

16   an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

17   2001). However, if a treating physician's medical opinion as to the nature and severity of an individual's

18   impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion

19   is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v.

20   Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).  Even when not entitled to controlling weight, "treating

21   source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the

22   treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment

23   relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and

24   (6) the area of specialization. Edlund, 253 F.3d at 1157 &  n.6 (quoting SSR 96-2p and citing 20 C.F.R. §

25   404.1527); Holohan, 246 F.3d at 1202. In order to reject the controverted opinions of a treating physician,

26   the ALJ must set forth specific and legitimate reasons, based upon substantial evidence in the record. Lester

27   v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).

28

                                          5

Plaintiff started seeing Dr. Hochberg on June 8, 1998 and continued to see him on approximately a monthly basis through December 2004, when the most recent administrative hearing was conducted. [See AR 371-390, 395-396, 490-492, 524-546]. Dr. Hochberg's diagnosis was paranoid schizophrenia. [AR 389, 524]. Dr. Hochberg prescribed numerous medications, which were changed or adjusted during the course of treatment. In December 2004, Dr. Hochberg noted that plaintiff was being treated with Zyprexa for psychosis, Zoloft for depression, Valium for anxiety, Reminyl for cognitive memory loss in schizophrenia, and Dalmane for insomnia. [AR 525]. Dr. Hochberg opined in 1998, 1999, 2000, and 2004 that plaintiff was markedly functionally limited, severely psychotic, depressed, and permanently disabled. [AR 373-375, 377, 381, 388, 491-492, 524-525]. In a functional assessment dated March 4, 1999, Dr. Hochberg found that plaintiff was moderately or markedly limited in several mental functional abilities, including "social interaction," "sustained concentration and persistence," and "understanding and memory." [AR 374]. He noted that plaintiff needed her husband to administer her medications because she was unable to do so. [AR 375].

The ALJ offered several reasons for rejecting Dr. Hochberg's disability opinion. The first reason was that Dr. Hochberg's treatment reports were "less than a page in length" each, were "cursory and [did] not contain clinical findings, records of in-depth examinations, interviews or other evidence in support of his opinion," and were based primarily on plaintiff's subjective complaints and symptoms. [AR 27].

Dr. Hochberg's routine monthly progress notes generally are brief, but his treatment records also include abnormal clinical findings. On initial mental status examination in June 1998, for example, he noted abnormal findings including anhedonia, depressed mood, delusions, paranoia, poor concentration and judgment, and fair insight. [AR 389]. An August 2000 mental status examination report states that plaintiff exhibited fearfulness, paranoia, disorganized speech, severe depression, anhedonia, marked auditory hallucinations, poor concentration and judgment, and fair judgment. [AR 491]. Thus, while his routine progress notes were brief, Dr. Hochberg did make clinical findings supporting his diagnosis and opinion. See Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999)(holding that the ALJ erred in asserting that an examining psychologist's opinion was inconsistent with the claimant's "benign" mental status examination where the examining psychologist found that the claimant exhibited

1  blunted affect and uncontrolled crying; a second examining psychologist found that the claimant was tearful,

2  sad, spoke in a monotone, and exhibited psychomotor retardation; and neither psychologist characterized

3  the claimant's mental status examination as "benign").

4        Other factors also weigh in favor of giving deference to Dr. Hochberg's opinion. He treated plaintiff

5  from June 1998 through December 2004, and during much of that period he saw her on a monthly basis.

6  Therefore, Dr. Hochberg he had the benefit of interacting with plaintiff frequently over a period of several

7  years. [See AR 371-390, 395-396, 490-492, 524-546]. The Commissioner's regulations recognize the

8  importance of such longitudinal evidence. See, e.g., 20 C.F.R. §§ 404.1527(d)(2)(i)("Generally, the longer

9  a treating source has treated you and the more times you have been seen by a treating source, the more

10  weight we will give to the source's medical opinion."); 20 C.F.R. Part 404, Subpart P, Appendix 1, §

11  12.00D(noting that the level of functioning of a claimant with a mental impairment "may vary considerably

12  over time. . . . Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period. . .

13  .").

14        In addition, a treating physician such as Dr. Hochberg "bring[s] a unique perspective to the medical

15  evidence. The treating physician's continuing relationship with the claimant makes him especially qualified

16  to form an overall conclusion as to the plaintiff's functional capacities and limitations, as well as to prescribe

17  or approve the overall course of treatment." Lester, 81 F.3d 831, 833.

18        Dr. Hochberg's specialty also is relevant. He is a board-certified adult and child psychiatrist whose

19  speciality makes him well-qualified to assess plaintiff's condition. See Smolen v. Chater, 80 F.3d 1273,

20  1285 (9th Cir.1996) (explaining that the opinion of a specialist about medical issues related to his or her area

21  of specialization are given more weight than the opinion of a nonspecialist) (citing 20 C.F.R. §§

22  404.1527(d)(5)).

23        The ALJ surmised that Dr. Hochberg improperly had relied on plaintiff's subjective complaints to

24  conclude that she was disabled. That reasoning fails to adequately account for the fact that Dr. Hochberg

25  had the opportunity to observe plaintiff in a clinical setting on a monthly basis for several years. Courts have

26  recognized that "[a] psychiatric impairment is not as readily amendable to substantiation by objective

27  laboratory testing as a medical impairment," and that "clinical and laboratory data" supporting a claim of

28

mental illness "may consist of the diagnosis and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam) (ellipses omitted)(holding that the ALJ erred in rejecting an examining psychiatrist's assessment for lack of documented clinical findings) (quoting Poulin v. Bowen, 817 F.2d 865, 873-874 (D.C. Cir. 1987)).

The ALJ's rejection of Dr. Hochberg's disability opinion on the ground that it was premised solely on plaintiff's subjective symptoms also ignores consistent findings and opinions from other treating and examining physicians.  Before she started treatment with Dr. Hochberg in June 1998, plaintiff saw Dr. Desmond B. Chiong for mental health treatment for almost two years, from November 16, 1994 to October 29, 1996. [AR 276-293, 394]. On her initial evaluation for complaints of chronic anxiety, depression, and chronic headaches, Dr. Chiong noted that plaintiff had been seeing a psychiatrist (whose name is illegible) for one year. [AR 289].  On mental status examination, plaintiff appeared depressed and quiet. Her husband translated.  She exhibited poor concentration and memory. She appeared nervous and fearful, and she was easily startled.  She reported sleeping problems and forgetfulness.  Her reality contact was intact. She reported that she helped clean her children's room but did not cook dinner because of her poor memory. She was socially withdrawn and stayed home. [AR 290-292].

Dr. Chiong diagnosed a major depressive disorder not otherwise specified. [AR 289]. He indicated that plaintiff could not work. He noted that she reported a poor response to trazodone, an anti-depressant, and buspar, an anti-anxiety drug.  Dr. Chiong initially prescribed Elavil for depression, Vistaril for anxiety, and Dalmane for insomnia. [AR 293].  He rated plaintiff's prognosis as poor. [AR 293]. Dr. Chiong saw plaintiff approximately monthly for therapy and medication adjustments. He noted that she reported some improvement on medication, but his notes reveal that she remained very fearful, depressed, and anxious.[AR 277-288]. A November 30, 1995 progress note lists plaintiff's diagnosis as "generalized anxiety disorder - depression." [AR 281].  Although that diagnosis is different than Dr. Hochberg's later diagnosis of paranoid schizophrenia, Dr. Chiong similarly concluded that plaintiff's mental impairment prevented her from

working.

A consultative examining psychiatrist and a consultative examining psychologist made findings generally consistent with those of Dr. Hochberg. [See AR 24]. Dr. Reznick, the Commissioner's consultative examining psychologist, evaluated plaintiff in February 2000 with the assistance of a Vietnamese language interpreter. [AR 443-456]. Dr. Reznick conducted an extensive review of the medical records, including Dr. Hochberg's reports. He also took a history from plaintiff and her husband, performed a mental status examination on plaintiff, administered psychological testing, and interpreted the test results. [AR 443].

Dr. Reznick noted that plaintiff's presentation was remarkable in that she was an extremely poor historian, and that while not overtly bizarre, her responses were sometimes unusual or idiosyncratic. [AR 443-444]. Dr. Reznick concluded that plaintiff exerted minimal or perfunctory effort throughout the evaluation, rendering her test scores as a whole invalid measures of her actual levels of functioning. Nonetheless, Dr. Reznick identified some test results that provided insight into her condition. On the Vineland Adaptive Behavior Scales, the primary informant was plaintiff's husband. Plaintiff's standard scores, adjusting for factors like minimally exerted effort, "probably do not exceed the upper end of the low range. Thus, the plaintiff appears quite incapacitated." [AR 452]. Dr. Reznick commented that the plaintiff may have actual levels of "intellectual functioning … above the mildly mentally retarded range and probably range anywhere from the borderline to average ranges." [AR 453].

Based on the test results and clinical data, Dr. Reznick diagnosed plaintiff with a depressive disorder, not otherwise specified, with psychotic features. [AR 453]. Notwithstanding the problems he noted with her effort and presentation, Dr. Reznick opined that plaintiff is "severely limited in the range of tasks in which she could engage satisfactorily. She could conceivably engage in simple and repetitive tasks with some supervision, although the plaintiff's anhedonia and associated amotivational stance might jeopardize her ability to do so on a consistent basis." [AR 453]. Dr. Reznick concluded that plaintiff would have difficulty "understanding, remembering and carrying out even simple verbal instructions" and "relating satisfactorily with co-workers, supervisors and the general public. . . ." [AR 454]. Plaintiff was "unable to handle her own financial affairs without assistance." [AR 454].

On a mental assessment form appended to his examination report, Dr. Reznick described plaintiff's reasoning as "limited and with proper interventions reflects an acute condition. Because of [her] psychiatric condition, she functions as if she were mentally retarded." [AR 455]. Plaintiff "could understand simple instructions and carry them out, but would need constant or regular supervision/monitoring to do so. She would not be able to relate to others nor handle stress in the typical work setting." [AR 455]. Plaintiff's ability to make personal adjustments was "limited–emotional stability is poor with somewhat better though still poor reality contact." [AR 455]. Plaintiff was "socially isolated and her social adjustments are poor." [AR 456]. She "is markedly impaired: she does not engage in normal daily activities because of her psychiatric problems." [AR 456]. Plaintiff also exhibited a "markedly impaired" constriction of interests. [AR 456]. Overall, plaintiff is "treatable but without intensive medication and psychotherapy sessions, she would have difficulties performing even simple tasks." [AR 456].

Although Dr. Reznick's clinical diagnosis was not identical to that of Dr. Hochberg, both physicians concluded that plaintiff exhibited signs and symptoms of psychosis and depression that resulted in marked and disabling functional limitations. Asked about the difference in these diagnoses during the hearing, Dr. Borden testified that they represent different disorders, but she acknowledged that there are "gray areas" in diagnosing mental impairments, and she indicated that plaintiff would meet the listing if either Dr. Reznick's or Dr. Hochberg's opinion were credited. [AR 587]. See Blankenship, 874 F.2d at 1121 (stating that "diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine," and that a psychiatrist's conclusions "should not be rejected simply because of the relative imprecision of the psychiatric methodology. . . .")(quoting Poulin, 817 F.2d at 873-874).

Dr. Ritvo, the Commissioner's consultative examining psychiatrist, evaluated plaintiff with the assistance of a Vietnamese language interpreter in July 2004. Dr. Ritvo noted that plaintiff was somewhat disheveled in her appearance, wore dirty old pajamas, and that her hair was scraggly. [AR 505]. Plaintiff "appeared to cooperate" but gave "very hesitant" and "non specific answers... She repeated herself several times when answering questions and at times frankly appeared confused. . . ." [AR 505]. Dr. Ritvo reported that plaintiff's mood was flat and unchanging throughout the interview, and that she appeared to be under the influence of antipsychotic medications. [AR 505]. She was "difficult to interview" because she had a

1    "very limited education" coupled with a "language problem." [AR 506]. She refused to do numbers, knew

2    the day of the week but not her social security number and only part of her phone number, and did not

3    answer other questions. [AR 506].

4         Dr. Ritvo diagnosed plaintiff with "[m]ajor depressive disorder with psychotic features, chronic,

5    severe." [AR 506]. "Judging from the past records," plaintiff had a "long standing major depressive disorder

6    with psychotic features." [AR 507]. Dr. Ritvo assessed a major impairment in the ability to (1) understand,

7    remember, or complete complex commands, (2) interact appropriately with supervisors, coworkers or the

8    public, (3) comply with job rules such as safety and attendance,(5) respond to change in the normal

9    workplace setting, and (6) maintain persistence and pace in a normal workplace setting. [AR 507, 508-509].

10        Dr. Ritvo's opinion was consistent with that of Dr. Reznick.  Those doctors based their opinions on

11   independent clinical findings as well as upon review of plaintiff's medical records.  Their reports document

12   symptoms, clinical findings, and functional assessments similar to those made by Dr. Hochberg.

13        The general consistency between the findings and conclusions of Dr .Hochberg and the

14   Commissioner's consultative examining physicians lends additional support to Dr. Hochberg's opinion.

15   Matthews v. Shalala 10 F.3d 678, 679 (9th Cir. 1993)(explaining that in general, the more consistent an

16   opinion is with the record as a whole, the more the weight is afforded that opinion).

17        Another reason given by the ALJ for discounting Dr. Hochberg's opinion was that although the

18   plaintiff needed "large amounts of medication," Dr. Hochberg failed to "offer or attempt any other type of

19   treatment" and did "not even find her mental condition serious and disabling enough to offer her inpatient

20   hospital care." [AR 27].  That reasoning is unconvincing.  Dr. Hochberg's specialization as a psychiatrist,

21   along with the length and frequency of his treatment relationship with plaintiff, make him best qualified to

22   determine the amount and kind of treatment that should be provided.  Lester 81 F.3d 831, 833. In addition,

23   Dr. Ritvo, the examining psychiatrist, commented that plaintiff "is in appropriate treatment." [AR 507]. The

24   ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician." Gonzalez

25   Perez v. Sec'y of Health and Human Servs., 775 F.2d 12, 14 (1st Cir. 1985).

26        The ALJ also rejected Dr. Hochberg's opinion because he was the only doctor to report a seizure

27   disorder when "there was no medical evidence of record that [plaintiff] ever had a seizure," and because he

28

was the only doctor to state that plaintiff suffered from auditory hallucinations and other symptoms related to past experience with the Viet Cong. [AR 29].  Even assuming that those findings by Dr. Hochberg are inconsistent with those of other doctors or are not supported by medically acceptable clinical and laboratory techniques, the result is that Dr. Hochberg's conclusions with respect to those impairments are not entitled to "controlling weight," not that his opinion should be rejected altogether.  Dr. Hochberg's opinion still is entitled to deference and must be weighed using all the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. Edlund, 253 F.3d at 1157 &  n.6. While there is no evidence in the medical record of a seizure incident, or of reports of hallucinations or other symptoms related to plaintiff's experience with the Viet Cong, Dr. Hochberg's opinion as to plaintiff's other psychiatric impairments is still entitled to deference under the factors set forth in the regulations.

Therefore, the ALJ's reasons for rejecting Dr. Hochberg's findings and opinion are not based on substantial evidence and do not reflect application of the proper legal standards.

**Consultative examining source opinions**

Plaintiff also contends that the ALJ improperly rejected the examining source opinions of Dr. Reznick and Dr. Ritvo, and that a proper evaluation of those opinions, alone or in conjunction with Dr. Hochberg's opinion, require a finding of disability.

The ALJ asserted that Dr. Reznick based his opinion on his review of the medical records, and specifically on Dr. Hochberg's opinion, which the ALJ rejected. [AR 27].  The ALJ, however, unduly minimized the significance of Dr. Reznick's independent examination findings and exaggerated the significance of Dr. Reznick's review of plaintiff's medical records.  Dr. Reznick conducted an extensive records review, including a review of Dr. Hochberg's reports, but nothing in his report suggests that he relied on them to the exclusion of his independent findings. Dr. Reznick documented abnormal mental status examination findings and made clinical observations based on his interview with plaintiff and her husband. Dr. Reznick also administered psychological tests.  While he judged most of those test results invalid, he concluded that some of the test results shed light on plaintiff's condition despite her perceived lack of effort or cooperation.[AR 451-453].

The ALJ also erred in concluding that Dr. Ritvo's **"**opinion [was] not consistent with, or supported

1   by his clinical findings in his evaluation, but… taken from past medical records. . . ." [AR 27].  Dr. Ritvo,

2   however, also conducted an interview and an independent mental status examination.  [AR 505-507].   Dr.

3   Ritvo indicated that he reviewed only two mental status reports for purposes of his evaluation.  One was an

4   August 1, 1998 psychiatric consultative examination report by Dr. Mounir Soliman, who opined that

5   plaintiff did *not* have severe mental symptoms that would limit her ability to work. [AR 502; see AR 316-

6   319].  The second was Dr. Reznick's February 2000 consultative examination report reflecting a diagnosis

7   of depressive disorder, not otherwise specified, with psychotic features. [AR 502].  That report included Dr.

8   Reznick's survey of plaintiff's prior medical records.

9          Dr. Ritvo remarked that plaintiff was a very poor historian, and therefore "[s]ome of what I am

10  reporting is taken from the past medical records." [AR 503].  He said that plaintiff's medical records

11  indicated that plaintiff "apparently had major psychiatric problems for at least a decade." [AR 504].   Dr.

12  Ritvo obviously did not derive that conclusion from Dr. Soliman's benign report.   That is, Dr. Ritvo

13  apparently found Dr. Reznick's report more convincing than Dr. Soliman's despite the problems Dr.

14  Reznick noted regarding plaintiff's effort and presentation.

15         It was not improper for Dr. Ritvo to give weight to medical reports that he reviewed and deemed

16  reliable, but he did not rely exclusively on those reports. He also made a number of clinical observations

17  during his interview and mental status examination that supported his diagnosis and functional assessment.

18  He noted plaintiff's subjective history of psychiatric problems, limited daily activities, and social isolation;

19  her disheveled, unkempt appearance; her hesitancy and confusion; her flat affect and brief crying spell; her

20  very limited (fourth grade) education; her appearance of being affected by her antipsychotic medications;

21  and her defective responses, or failure to respond, to questions testing her intellectual functioning, fund of

22  knowledge, concentration, insight, and judgment. [AR 505-506]. See Regennitter, 166 F.3d at 1299 (holding

23  that the ALJ erred in asserting that an examining psychologist's opinion that the claimant had a listing-level

24  disorder was inconsistent with the claimant's "benign" mental status examination where that examining

25  psychologist found that the claimant exhibited blunted affect and uncontrolled crying, another examining

26  psychologist found the claimant to be tearful and sad, with monotone speech and psychomotor retardation,

27  and neither examining doctor characterized the claimant's mental status examination as "benign").

28

1    The ALJ further erred in giving greater weight should be given to Dr. Soliman's 1998 consultative

2    examination report and the reports of two non-examining state agency physicians than the conflicting

3    treating and examining opinions of Dr. Hochberg, Dr. Chiong, Dr. Reznick, and Dr Ritvo.  On August 1,

4    1998, Dr. Soliman performed a psychiatric examination at the Commissioner's request.  He diagnosed an

5    anxiety disorder, not otherwise specified, and depression.  He concluded that plaintiff's symptoms were

6    manageable as an outpatient, and that there were "no objective findings to suggest severe symptoms which

7    might limit the plaintiff's work habit."  [AR 24].  Dr. Soliman, however, did not review any past medical

8    records, despite plaintiff report of being under psychiatric care with multiple prescriptions for medication,

9    and he described her past psychiatric history as "[u]nremarkable for treatment as an inpatient or outpatient."

10   [AR 316].  Even if that observation was accurate in 1998 when Dr. Soliman examined plaintiff, it does not

11   accurately reflect the totality of the record before the ALJ, something which undermines the ALJ's reliance

12   on Dr. Soliman's 1998 report.   Dr. Soliman, moreover, was not a board-certified psychiatrist like Drs.

13   Hochberg and Ritvo. [AR 319 (bearing the notation "Psychiatrist, B/E" meaning "board eligible")[3]].

14   It is plain from the ALJ's decision that he was highly skeptical of the medical opinions of disability

15   in the record because of the well-documented irregularities and inconsistencies in plaintiff's clinical

16   presentation and his suspicion that she was exaggerating her symptoms. The variability in her presentation

17   and the nature of her subjective symptoms, however, did not deter two longtime treating physicians, a

18   consultative examining psychiatrist, and a consultative examining psychologist from concluding that

19   plaintiff had a serious psychiatric disorder that produced marked mental functional limitations.  None of

20   those doctors indicated that plaintiff was malingering.  See Regennitter, 166 F.3d at 1300 (holding that the

21   ALJ erred in faulting an examining psychologist for taking the claimant's statements "at face value" where

22

23       [3]     According to the website of the American Board of Medical Specialties (the "ABMS"),
         of which the American Board of Psychiatry and Neurology is a member, board certification is a
24       "rigorous" multi-pronged process with requirements for particular specialties set by member
         boards.  Because "some physicians refer to themselves as being 'board eligible,' 'board
25       admissible' or 'board qualified' for an indefinite period "while making no progress toward
         completing their certification," the ABMS has "disavowed the use of these terms. . . ." ABMS,
26       "Understanding the Certification Process," available at
         <http://www.abms.org/Who_We_Help/Professional_Organizations/process.aspx (last visited
27       August 14, 2008).

28

                                                        14

1   the examining psychologist conducted a clinical interview, mental status examination, and administered

2   psychological tests, and where neither of the two examining psychologists said that the claimant was

3   malingering).

4       The ALJ was not free to reject those treating and examining source opinions without articulating

5   specific, legitimate reasons for doing so based on substantial evidence.  He did not meet that burden.

6   Moreover, the ALJ's reliance on Dr. Soliman's conflicting examining source opinion was unjustified in

7   view of the record as a whole, and the nonexamining physicians' conflicting opinions alone did not

8   constitute substantial evidence supporting the ALJ's decision. See Morgan, 169 F.3d at 602.

9       **Remedy**

10      The choice whether to reverse and remand for further administrative proceedings, or to reverse and

11  simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

12  Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of

13  benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S.  1038

14  (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand

15  to the agency for additional investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir.

16  2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).  A district court, however, should

17  credit evidence that was rejected by the ALJ and remand for the payment of benefits if "(1) the ALJ failed

18  to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must

19  be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ

20  would be required to find the claimant disabled were such evidence credited." Benecke v. Barnhart, 379 F.3d

21  587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).  The Harman test "does not obscure the more

22  general rule that the decision whether to remand for further proceedings turns upon the likely utility of such

23  proceedings."  Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further

24  administrative proceedings is appropriate "if enhancement of the record would be useful").

25      In this case, a remand for an award of benefits is the appropriate remedy.  As discussed above, the

26  ALJ erred in rejecting the controverted opinions of treating physician Dr. Hochberg and consultative

27  examining physicians Dr. Reznick and Dr. Ritvo.  Dr. Hochberg opined that plaintiff was disabled beginning

28

1  in June 1998. [AR 388]. The medical expert, psychologist Dr. Betty Borden, testified that if the opinions

2  of Dr. Hochberg, Dr. Ritvo, or Dr. Reznick were credited, plaintiff would be disabled under the listing.  Dr.

3  Borden also testified that Dr.  Hochberg's reports indicate the existence of a significant impairment as far

4  back as June 1998, at around the time plaintiff filed her current SSI benefits application. The vocational

5  expert testified that no work would be available for a person with the limitations reflected in the reports of

6  Drs. Hochberg, Reznick, or Ritvo. Thus, if the improperly discredited medical opinions are credited, no

7  outstanding issues remain to be resolved, and it is clear that the ALJ would be required to find plaintiff

8  disabled and award benefits.

9                                                       **Conclusion**

10          For the reasons stated above, the Commissioner's decision is not supported by substantial evidence

11  and contains legal error.  Accordingly, the Commissioner's decision is reversed, and the case is remanded

12  for an award of benefits consistent with this memorandum of decision.

13          **IT IS SO ORDERED.**

14

15          DATED: August 28, 2008

16                                                                            _____

17                                                                            ANDREW J. WISTRICH
                                                                                United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28